GLEZEN & BROWNELL *v.* PRESTON M. FARRINGTON and others.

A committing creditor who withdraws his opposition to his debtor's petition for the insolvent act, declaring to him and to one of his sureties on a prison limits bond, that he was satisfied with the debtor's exhibition of his affairs and should no longer oppose the granting of his petition, is not thereby estopped to sue such bond for an escape of the debtor from the prison limits, committed subsequently to such withdrawal and declarations, and certainly not, when such withdrawal and declarations are by his attorney; since the attorney, unless specially empowered, has no authority to discharge the debtor from his commitment, except upon full payment of the execution.

DEBT upon a jail bond, against the principal and sureties of the same; the declaration setting forth the condition of the bond and the breach thereof by the principal.

The second plea alleged, that after the execution of the bond, the principal filed, at the March term, 1861, of the Supreme Court for the county of Providence, his petition for the benefit of the law in relation to insolvent debtors ; that the plaintiffs had before that time recovered a judgment in said court against the principal, upon which they had taken out an execution, and caused him to be committed to the Providence county jail, and that the bond aforesaid was given by the said defendants upon said commitment ; that, in the said petition, the plaintiffs were set forth as creditors of the principal, and entered an appearance against said petition by their attorney, Charles F. Brownell, Esq. ; that, at the request of their said attorney, the principal, at said term and a few minutes before his petition was called, had an interview with said attorney, at which interview said attorney made certain inquiries of the principal concerning his pecuniary circumstances, the amount and character of his debts, and the disposition of his property, and concerning other matters referred to in said petition, and then and there expressed to him his entire satisfaction with the answers he had received and the result of said interview, and assured him that the plaintiffs would withdraw all opposition to his receiving the benefit of said insolvent law ; that thereafter, immediately, the said petition was called for hearing, whereupon said attorney for the plaintiffs announced to the court, in the presence and hearing of the principal, that he withdrew all opposition to said petition, and assented to the granting of the same, upon hearing which, the court expressed its determination to grant said petition, there being no further opposition thereto ; that upon said announcement of said attorney of the plaintiffs, the attorney of the principal,—then petitioner,— suggested to the court, that the oath annexed to said petition was not in the language required by the statute, whereupon the said attorney for the plaintiffs stated to the court that he would waive all objection to all informalities and irregularities, and would allow an amendment to said petition ; that the attorney of the petitioner then and there expressed to the court his fear that

Glezen & Brownell *v.* Farrington and others.

an amendment would not answer his purpose, but that it would be better for the petitioner to have his petition continued to the next term of the court ; that the said attorney for the plaintiffs then and there rose and stated, in the presence and hearing of the petitioner, to the court, that so far as his clients (meaning the plaintiffs) were concerned, the petitioner might do as he pleased with his petition, that he withdrew all opposition to said petition, and now withdrew his appearance to the same, whereupon said petition was continued to the next term of said court ; that thereafterwards, to wit, on the          day of          1861, and before the 18th day of May, 1861, and before the principal is alleged to have passed off the limits of said jail-yard as set forth in the plaintiffs' declaration, the said James B. Ames, one of these defendants, met the said attorney of the plaintiffs in the street in the city of Providence, and then and there expressed to said attorney his gratification that the plaintiffs had withdrawn their opposition to his principal's having the benefit of the insolvent act, and that he, the said Ames, was satisfied that the said principal had no means whatever, and was glad, for his sake, that the plaintiffs had let him off ; that the attorney of the plaintiffs then and there, in reply to said Ames, said, that he had an interview with the principal, and had satisfied himself of the correctness of his statements in his said insolvent petition, and, consequently, they, meaning the plaintiffs and said attorney, had concluded to let said principal go ; that thereupon, and before the said 18th day of May, 1861, the said Ames stated to the principal the conversation he had had as aforesaid with said attorney of the plaintiffs, and that, in consequence, and upon the faith of the doings, actions, representations and assurances of the plaintiffs, through their said attorney as aforesaid, the said principal was induced to believe that he was at liberty to go whenever he pleased, and that all attempts to pursue him farther had been and would be abandoned by the plaintiffs, and that, therefore, he, the said principal, believing as aforesaid, did, on said 18th day of May, 1861, go off and beyond the limits of said jail, as he lawfully might, and this he is ready to verify. Wherefore, &c.

To this plea there was a demurrer and joinder.

*Ashley,* with whom was *Brownell,* for the plaintiffs :—

*First.* What was set forth in the plea, as stated by the attorney for the plaintiffs, even if said by the plaintiffs themselves, would not amount to a license to the principal to go off the jail limits ; all of it relating to the petition and to the proceedings upon it.

*Second.* The attorney of record of the plaintiff in a suit has no authority, unless it be specially given, to discharge the defendant from custody on a writ of execution, except upon payment of the whole debt. *Lewis* v. *Gamage,* 1 Pick. 346 ; *Crary et al.* v. *Turner,* 6 Johns. R. 51, and n. ; *Jackson* v. *Bartlett,* 8 Ib. 281 ; *Kellogg* v. *Gilbert,* 10 Ib. 220 ; *Union Bank of Georgetown* v. *Geary,* 5 Peters, 113 ; *Givens* v. *Briscoe,* 3 J. J. Marshall, 532.

*Hayes,* with whom was *W. H. Potter,* for the defendants :—

The plaintiffs have waived the performance of the condition of said bond, and are estopped from prosecuting this action. *Hicks* v. *Cram,* 17 Vermont, 449 ; *Preston* v. *Mann,* 25 Conn. 118 ; *Hawes* v. *Marchant.* 1 Curtis, 136 ; *United States* v. *Howell,* 3 Wash. 620 ; *Fleming* v. *Gilbert,* 3 Johns. R. 520 ; *Langworthy* v. *Smith,* 2 Wend. 587 ; 1 Esp. Cas. 31.

BULLOCK, J. The question upon this demurrer is, the sufficiency in law of the facts pleaded to justify Farrington in leaving the jail limits.

The defendants Ames and Lippitt, sureties, contend, in support of the demurrer, that the matters averred in the plea amount, in law, to a *waiver* by the plaintiffs of the condition of the bond, and so they are estopped from prosecuting this action. They say that when a party makes a material representation in respect to any matter, for the purpose of inducing another party to act upon it, and the other party does so act in consequence, the party making the representation is estopped from denying it. It is true, as a general rule, that when a person has willfully or designedly induced another to believe a certain state of facts to exist, and to act upon such belief, he is not permitted afterwards to set up a state of facts different from that represented, to the injury of such other party ; and this is especially the case when the representations are made fraudulently. 1 Greenleaf's Ev. § 27 ; 2 Parsons on Cont. 340–3. Thus, a party who holds himself out to the world

as a member of a trading firm, and thereby leads strangers to deal with the firm upon his credit, cannot afterwards, as to such creditor, deny that he was a partner. Such was the case of *Hicks et al.* v. *Cram et al.* 17 Verm. 449, cited. So, when one publicly represents himself, and acts as if he were the husband of a woman not his wife, he is chargeable for debts incurred by her for necessaries, to the same extent as if the legal relation actually subsisted. And, upon the like principle, a subsequent endorser of negotiable paper is not permitted to deny the genuineness of a prior endorsement. The reason of the rule is obvious. The policy of the law is, that men shall act in good faith towards each other, and to condemn all double dealing. But it is not every representation or admission that operates as an estoppel *in pais.* Many verbal admissions and statements are daily made to parties in opposite interest, that have no legal effect by way of estoppel. And such statements are always received for this purpose with great caution, because of the liability of their being misunderstood or misrepresented; and especially when it is claimed that verbal statements should operate to release a sealed instrument, and to satisfy and discharge a judgment. So, when the statements, made at different times, are evidently in the nature of one continuous statement, and relate to the same general subject, the whole should be taken in connection and together, for the purpose of determining the just effect of the declaration made. And although it be said estoppels are not favored in law, lest they may exclude the truth, yet when the admission or declaration thus set up is deliberately made, is clear and explicit in its terms, and when, by a fair construction of the language used or act done, taken as a whole, it plainly refers to the subject matter upon which it is claimed to operate, and the party charged has honestly acted upon the statement as if it were true, the party making it, and all who claim in privity with him, are estopped to deny its truth.

The application of these principles governs this case. Here, the defendants, with Farrington, execute a bond, conditioned that he will remain in custody, until " lawfully discharged." He makes application for the benefit of the insolvent act. The plaintiffs say, they will not oppose the application. Before the

petition is heard, one of the defendants (Ames) casually meets the plaintiffs in the street, and commends the course they have taken in reference to this application, and at the same time, and in the same connection, the plaintiffs reply, they "had concluded to let Farrington go."

Is there, in all this taken together, so plain, explicit and deliberate an avowal by the plaintiffs as should authorize a business man to infer that they had before released, or did then release Farrington from custody, whereby they would discharge their judgment against him, as well as his sureties, upon the jail bond? We have thus far assumed that the representations were made by the plaintiffs in person, to the defendants, or some of them. But the record shows, that these several representations were made by C. F. Brownell, Esq., the attorney of the plaintiffs in the original suit against Farrington, and also their acting, and no doubt authorized, counsel, at the first hearing of Farrington's petition. And so at the argument, the question arose, and has been considered, how far the acts or admissions of an attorney, after final judgment, bind the client by virtue of this general relation. The rule is, that the powers and duties of an attorney cease when final judgment has been rendered; *Crary et al.* v. *Turner*, 6 J. R. 53; *Jackson et al.* v. *Bartlett*, 8 Ib. 361; *Holker et al.* v. *Parker*, 7 Cranch, 436, and cases cited; or, at least, when execution has been sued out. Certainly, he has no power to discharge an execution, except upon full payment; and this right, if such exists, rests more upon the presumed acquiescence of the client than upon any authority, the result of the general relation that subsists between them.

If it be said, that here the attorney was specially authorized,— no such special authority is distinctly averred; and if claimed, it should have been averred, since it is matter which the plaintiffs were at liberty to traverse; for it is not denied that the plaintiffs might have discharged Farrington from commitment, as well by an agent as by themselves. But a more grave difficulty is found in the fact, that the statements, whether regarded as the statements of the plaintiffs or of Mr. Brownell the attorney, relate not to Farrington's commitment upon the original execution, but to his proceedings in insolvency. The defendant's plea, taken as a

whole, shows this. What transpired in court, expressly related to the petition and *only* to the petition, and taken in connection (for they are obviously connected in the plea) with what afterwards occurred in the street, and by every rule of fair and just construction, they can bear no other interpretation.

If it be said the attorney should have used language more precise, and so have excluded the conclusion of Farrington's discharge, it was equally his duty, and that of his sureties, to have placed the question of his actual discharge upon higher grounds than those of a doubtful implication.

The demurrer is therefore sustained.