## In re GSAND.

### FREEMAN v. McCARTHY.

No. 9007.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 11, 1946.

Decided Feb. 11, 1946.

Morris M. Wexler, of Philadelphia, Pa. (Wexler & Weisman, of Philadelphia, Pa., on the brief), for appellant.

Robert C. Kitchen, of Philadelphia, Pa., for appellee.

Before GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The only real question involved in this appeal is the extent of the authority of an attorney at law to bind his client under the particular facts. The client, McCarthy, loaned one Gsand the sum of $3500 within four months of the latter being adjudicated a bankrupt. The obligation was secured by an unrecorded assignment of one-tenth interest in a mortgage owned by Gsand. $2500 of the loan had been repaid to McCarthy prior to Gsand's bank-

ruptcy. Thereafter a proof of claim was filed by Robert C. Kitchen, Esq., an attorney at law, on behalf of McCarthy in the bankrupt's estate. This showed the original debt, the payments on account and that the security for the debt was the assignment above referred to. Objections to it were filed by the trustee on November 20, 1943. These consisted of: (1) That the assignment was executed by the bankrupt within four months of bankruptcy; (2) that the assignment was invalid as it had not been recorded; (3) that the payments amounting to $2500 constituted a preference as they were made within four months of bankruptcy. It was asserted that "claimant is not entitled to have his claim allowed except upon the return of the foregoing preference." On December 21, 1943 the trustee filed amended objections to the claim stating that claimant had received preferences from the bankrupt consisting of transfers of cash aggregating $2500 and the unrecorded assignment. The objections concluded by stating that the "proof of claim cannot be allowed unless claimant surrenders such preferences."

After the amended objections had been noticed for hearing, Mr. Kitchen wrote the Referee saying, "I have concluded that the objections of the Trustee are properly founded and for this reason agree to the entry of an order sustaining the same." On December 29, 1943 before the Referee and in the presence of counsel for the trustee, Mr. Kitchen said that the stipulation he was prepared to make for the record on behalf of his client was to the effect "that the concurrence with the petition of the trustee is limited to the status of the collateral upon which the claim of W. Robert McCarthy was filed as a secured creditor in that part which is eliminated, that failure in recording the assignment to Mr. McCarthy upon which his claim was founded would necessitate under the Act that the assignment be considered as security for an antecedent debt, although it was actually given contemporaneously with the debt which is secured for this reason. It is agreeable that objec-

tions to the filing of this claim as a secured claim be sustained by a form of order confined to that subject matter." The Referee asked Mr. Kitchen, "Do you agree that by the receipt of this cash money and the receipt of an assignment of a certain interest in a mortgage you received a preference?" Mr. Kitchen replied, "I agree that the assignment, which is the only thing claimed here by McCarthy under the terms of the Act would be considered preferential because the debt would be regarded as an antecedent debt." The Referee then queried, "What about the cash?" Mr. Kitchen answered: "I am not in Court on that." After the attorney for the trustee stated that Mr. Kitchen was under a misapprehension, there was a discussion between Mr. Kitchen, the trustee's attorney and the Referee which appears in the record as follows:

"By Mr. Kitchen: You say I am under a misapprehension, if so, I want to know. We filed no claim against the bankruptcy estate, we claim nothing against the bankruptcy estate only the collateral, we claimed that.

"By Mr. Wexler: You filed a claim in this case as a creditor.

"By Mr. Kitchen: The intention was simply to file a claim based on the collateral.

"By Mr. Wexler: You filed a proof of claim as a creditor to this case for a dividend. For example your client had in his possession $1,000. of bonds, would it necessitate the filing of a claim?

"By Mr. Kitchen: I think Mr. Wexler is correct, and I think the order should stand on that form.

"By Mr. Wexler: You agree to it?

"By the Referee: You have read it and agree to the entry of an order as presented by Counsel for the Trustee.

"By Mr. Kitchen: Yes.

"By the Referee: I will enter the order."

The Referee then made an order which holds that the partial payments amounting to $2500 constituted voidable preferences.[1]

---

[1] The Referee's order of December 29, 1943 reads as follows:

"And now, to wit, this 29 day of December, 1943, upon hearing and consideration of the proof of claim filed by W. Robert McCarthy, a creditor of the above-named bankrupt, and the Amended Objections thereto filed by Albert T. Bauerle, Trustee, averring that said creditor received certain preferences from the bankrupt voidable under the Bankruptcy Act, to wit, (a) transfers of cash as follows: May 29, 1943, $1,000; June 17, 1943, $400.00; June 19, 1943, $350.-

Thereafter the trustee demanded the reassignment of the mortgage collateral and repayment of the $2500. The former was agreed to. The latter was refused on the ground that the payments making up the $2500 were received by McCarthy without knowledge of the insolvency of the bankrupt. The trustee's attorney wrote Mr. Kitchen saying: "Since there is obviously disagreement between us on this issue, it would seem best to have the same legally determined, * * *." Suit was then commenced against McCarthy for the $2500. The basis of the action was the above referred to order of the Referee which was pleaded as a final adjudication of the merits of the matter. A motion to dismiss the trustee's complaint was denied by the Court for substantially the same reason. On May 5, 1944 a motion was filed to open the Referee's order. The motion alleged that the claimant McCarthy at the time he received the partial payments had no knowledge of the bankrupt's insolvency and gave no authority to his attorney of record to enter into any agreement, stipulation or admission of any nature in that particular. Relief was prayed for under Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., following section 723². The motion was dismissed by an order of the Referee of June 19, 1944. On review, the District Court recommitted the motion to the Referee to take testimony upon the question of the existence and extent of the authority of Mr. Kitchen as attorney for McCarthy with reference to the former's agreement to the entry of the order of December 29, 1943.

In accordance therewith, testimony was taken of Messrs. Kitchen and McCarthy. The former said that he explained to his client that the assignment he had received had not been acknowledged, could not be recorded, was not valid and that he would not be able to press the claim on that security. McCarthy agreed that the claim should be abandoned. Mr. Kitchen then said he told Mr. Wexler, the attorney for the trustee, "That we would abandon the claim on this collateral, and following that I notified you, Sir (the Referee) and the time was then fixed following that for a hearing. Now, that is the full extent of the discussion I had with Mr. McCarthy on the subject of his claim. That is the full extent of the authority that was given to me in regard to it." This was the first legal matter Mr. Kitchen had had for his client. Mr. Kitchen further testified that he told McCarthy that "I had agreed to abandon the claim." He said that conversation "related to the collateral that he (McCarthy) held and that was the conversation that I was going to act on." He said that McCarthy agreed to this.

McCarthy, who had been excluded from

---

00; July 1, 1943, $400.00; and July 28, 1943, $350.00, totalling $2,500.00, and (b) an unrecorded assignment by way of security, dated May 10, 1943, of a one-tenth interest owned by the bankrupt in a certain indenture of mortgage executed by Schiller Brewing Company to Florence V. Gsand, et al, dated August 8, 1940, recorded in the office for the Recording of Deeds in and for the County of Philadelphia, in Mortgage Book D.W.H. No. 496, page 141, &c., and averring further that said proof of claim cannot be allowed unless such preferences are surrendered; and the said W. Robert McCarthy having appeared by counsel, and agreed that said Amended Objections are properly founded and valid, and that an Order may be entered sustaining the same, it is hereby

"Ordered, adjudged and decreed that the said W. Robert McCarthy, having received the voidable preferences aforesaid, the Amended Objections filed by Albert T. Bauerle, Trustee, are hereby sustained; and

"Further ordered, adjudged and decreed that the claim of W. Robert McCarthy is hereby disallowed under Section 57 (g) of the Bankruptcy Act [11 U.S.C.A. § 93, sub. g], unless said creditor shall surrender the preferences aforesaid."

² Rule 60 (b) F.R.C.P. reads:

"Mistake; Inadvertence; Surprise; Excusable Neglect. On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding, or (2) to set aside within one year, as provided in Section 57 of the Judicial Code, U.S.C., Title 28, § 118, a judgment obtained against a defendant not actually personally notified."

the room while Mr. Kitchen testified said that this occasion was the first time he ever had a lawyer. He stated: "I engaged Mr. Kitchen purely to try to collect what I thought was a valid assignment at that time." and that there was a balance of $1,000 due and owing upon the original loan of $3500. On being advised that the assignment was worthless he told his attorney "that if it was not valid to forget our claim." Several times he stressed that he felt Mr. Kitchen was acting in good faith but there is nothing in his testimony to contradict either Mr. Kitchen or himself to the effect that Kitchen initially represented him on the single item of the $1,000 balance. Illustrative of this is the following question by the attorney for the trustee with McCarthy's answer:

"Q. You were satisfied Mr. Kitchen was representing you in accordance with your engagement; anything he did was satisfactory, is that right? A. Now, wait a second, Mr. Wexler, What do you want me to say—that Mr. Kitchen could sell my title referred to and all my right? No, I wanted him to represent me in that particular thing and protect my interest."

He said he "was very much astounded" when he learned that the trustee's attorney was demanding the return of the $2500 and that he asked Mr. Kitchen to protect his interests. He was queried by the Referee as to whether he ever charged Mr. Kitchen with ever having violated his instructions and he answered, "I wouldn't have known that. I wasn't brought into court. If there had been I certainly would have charged Mr. Kitchen with violating. He was instructed to do one thing at a time."

A careful study of all the testimony fails to reveal any fair basis for concluding that McCarthy gave his lawyer a general authority. Nowhere in the record do we find any material variance on the facts between the client and the attorney. We disagree with the appellant when he asserts that there was no compromise of a claim or surrender of a cause of action and that all that was done by the attorney was to dispense with the necessity of the production of proofs by the trustee to support the objections filed. It is clear from the transcript that the attorney in-

nocently overstepped his limited authority by agreeing to the entry of the order of December 29, 1943. He wrongly assumed that he was simply closing out the worthless $1,000 secured claim and utterly failed to appreciate that he was virtually destroying his client's right to the $2500 already paid him. Neither the testimony or the argument produces any reason why McCarthy should have given his attorney authority to sacrifice the $2500. As far as appears McCarthy felt he had the partial repayment so securely that other than to note its amount against the total loan, there never was any talk regarding it between his lawyer and himself until after the order of December 29, 1943. All of the common sense of the situation is opposed to construing the attorney's claim of lack of authority as an afterthought.

The Lower Court said in its opinion:

"Were this case one involving the credibility of witnesses or the resolving conflicts of testimony upon disputed issues of fact, I should hesitate to set aside the findings of the referee but such conflicts as there are between Kitchen and McCarthy are not of great importance and the referee's findings depend almost entirely upon inferences, factual and legal, drawn from the testimony of McCarthy. In such cases review by the Court properly has a wider scope.

"The Court finds as a fact that the attorney was not authorized to agree to the order of Dec. 29, 1943 to the extent that it adjudicated the cash payments to McCarthy to be preferences."

As seen, the District Judge is not picking and choosing bits of evidence to make findings of fact contrary to those of the Referee. He holds, and rightly so we think, that the Referee is in error in considering that the testimony of the attorney and his client differ in any important respects. He further holds in effect that it cannot be reasonably inferred from the evidence of the client, as attempted by the Referee, that Mr. Kitchen had the authority to consent to the order of December 29, 1943. It follows that the action of the District Court in reversing the Referee is not opposed to General Order 47 in Bankruptcy, 11 U.S.C.A. following Section 53 [3] or to our opinion in Epstein

---

[3] General Order 47 in Bankruptcy reads:

"Unless otherwise directed in the or-

der of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law,

v. Steinfeld, 3 Cir., 210 F. 236, 237, for in the Referee's decision, as said in the Epstein opinion, "a plain mistake has been made."

Strawn's Appeal, 350 Pa. 138, 38 A.2d 48, 49, is of no assistance to the appellant under the instant facts. There was a general authority in that case and the attorney was " * * * to do whatever he thought should be done for you (the client) as an attorney." Similarly in Cole v. National Casket Co., Inc., 101 Pa.Super. 207, also cited, where the Court said:

"The authority of an attorney of record extends to everything necessary to the protection and promotion of the interests *entrusted to his care* so far as they are affected by the proceedings in the court where he represents his client. He may enter into stipulations and agreements in all matters of procedure, during the progress of the trial." (Emphasis ours)

We think the language of Chief Justice Marshall in Holker v. Parker, 7 Cranch, 436, 3 L.Ed. 396, peculiarly fitting in the circumstances. The principles of that old case are still the law generally and in Pennsylvania. The Chief Justice said at page 452 of 7 Cranch:

"Although an attorney at law, merely as such, has, strictly speaking, no right to make a compromise; yet a Court would be disinclined to disturb one which was not so unreasonable in itself as to be exclaimed against by all, and to create an impression that the judgment of the attorney has been imposed upon, or not fairly exercised in the case. But where the sacrifice is such as to leave it scarcely possible that, with a full knowledge of every circumstance, such a compromise could be fairly made, there could be no hesitation in saying that the compromise, being unauthorized, and being therefore in itself void, ought not to bind the injured party. Though it may assume the form of an award, or of a judgment at law, the injured party, if his own conduct has been perfectly blameless, ought to be relieved against it. This opinion is the more reasonable because it is scarcely possible that, in such a case, the opposite party can be ignorant of the unfair advantage he is gaining. His conduct can

seldom fail to be tainted with some disingenuous practice; or, if it has not, he knows that he is accepting a surrender of the rights of another from a man who is not authorized to make it."

See Stokely v. Robinson, 34 Pa. 315; Township of North Whitehall v. Keller, 100 Pa. 105, 45 Am.Rep. 361.

In Starling v. West Erie &c. B. & L. Assn., 333 Pa. 124, 3 A.2d 387, the Court discussing the powers of an attorney in the course of suit or in the management of the regular course of litigation said at page 126 of 333 Pa. 124, 3 A.2d 388:

" * * * such apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him. * * *"

In Nesbitt v. Turner, 155 Pa. 429, 26 A. 750, the defendant was sued on a surety bond which she said she signed while she was a married woman. She also claimed that the date of the bond was altered. Her attorney stipulated on the record:

"Admitted that when this bond was executed the defendant was a widow, the widow of Hon. S. G. Turner, deceased, and that she is still unmarried."

The Supreme Court passing upon this said, 155 Pa. 429 at page 440, 26 A. 752:

"It is scarcely necessary to discuss the admission claimed to have been made by counsel for appellee. Its effect would necessarily have been fatal to her defense. It is therefore not possible that with this effect it could have been intended to be made. It would be a harsh rule to hold that the rights of parties may be swept away by admissions of counsel, unintentionally made. The learned judge was right, therefore, in treating the admission as unintentional, and the jury in regarding it in the same light."

Federal decisions construing Rule 60(b) are in much the same vein. In Preveden v. Hahn, D.C.S.D.N.Y., 36 F.Supp. 952, there was a plaintiff's motion to vacate an order of dismissal of his complaint which had been entered by stipulation of counsel. The Court said at page 953 of 36 F.Supp.:

---

and the judge shall accept his findings of fact unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

"The attorney for the plaintiff, who signed the consent dismissing the action, admits in an affidavit on file that he had no express authority to do so, and this is the fact. Defendants apparently do not claim otherwise, but contend that such authority existed by implication in the attorney's retainer. In this contention the defendants are wrong. An attorney has no right to settle his client's case nor to consent to a dismissal of it upon the merits which in effect is a release of the claim, without express authority from his client. No such authority is implied in a mere retainer. White v. Joyce, 158 U.S. 128, 129, 15 S.Ct. 788, 39 L.Ed. 921; Kingsbury v. Buckner, 134 U.S. 650, 10 S.Ct. 638, 33 L.Ed. 1047; United States v. Beebe, 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563; Schram v. Poole, 9 Cir., 111 F.2d 725; Countryman v. Breen, 241 App.Div. 392, 271 N.Y.S. 744. The order in question was therefore not valid and the plaintiff did not learn of its entry until several months had passed."

And see United States v. Mutual Construction Corp., D.C.E.D.Pa., 3 F.R.D. 227; Cavallo v. Agwilines, Inc., D.C.S.D. N.Y., 2 F.R.D. 526; McGinn v. United States, D.C.Mass., 2 F.R.D. 562.

Affirmed.