Luce v. Foster.

CLARENCE A. LUCE ET AL. V. BLANCHE L. FOSTER ET AL.

FILED NOVEMBER 20, 1894.   No. 5234.

1. **Attorneys:** LIABILITY AS BONDSMEN: ESTOPPEL.   Under our statute an attorney at law should not become a surety upon a bond in a legal proceeding in the district in which he lives, and if he sign such a bond the clerk should not approve it, but if it be approved, the surety is nevertheless bound thereby.   *Tessier v. Crowley*, 17 Neb., 207, followed.

2. **Allegata et Probata.**   Under the Code of Procedure, as well as at common law, the *allegata et probata* must agree.   A party will not be permitted to plead one cause of action and upon the trial rely upon proof establishing a different cause.

3. **Attorney and Client:** INDEMNITY BOND TO SHERIFF: AUTHORITY OF ATTORNEY TO EXECUTE.   An attorney at law, by virtue merely of his employment as such to prosecute an action, has no authority to execute on behalf of his client a bond to indemnify the sheriff from the consequences of levying upon property claimed by a stranger, the client residing and being at the place where the events took place and there being full opportunity for prompt communication between client and attorney.

4. ———: ———: PROCEEDS OF SHERIFF'S SALE.   An attorney in such a case has no authority to bind his client by an agreement that the proceeds of execution shall be by the sheriff paid to the surety on the indemnity bond, to be held as security against liability thereon.

5. **Indemnity Bonds:** EXECUTION BY ATTORNEY: LIABILITY OF SURETIES.   The bond on its face showing that the client's name was signed by the attorney and not by the client, both the surety and the officer were bound to know that it was done without authority, and under such circumstances the surety must be held to have executed the undertaking absolutely and is not released merely because there was no authorized signature by the principal.

6. **Bonds:** PRIVATE SEALS: CONTRACTS.   Our statute having abolished private seals it abolished at the same time their incidents, and an instrument in the form of a bond must be now deemed a simple contract not conclusively importing a consideration.

.7. ———: Consideration: Proof.   Want of consideration for such a bond or the illegality thereof may be shown by parol.

8. Proceeds of Sheriff's Sale: Duty of Sheriff.   It is the duty of a sheriff under an ordinary writ of execution to pay the proceeds directly to the parties entitled and not return the money into court.

9. ———: Agreement to Pay Third Person: Sheriff: Public Policy.   Therefore, it is not illegal nor against public policy for the sheriff, by the authority and with the consent of the plaintiff to the writ, to agree to pay the proceeds to a third person, but in order that such agreement shall be lawful it must be made with the consent or by the authority of the person entitled to receive the money.

10. Contracts: Consideration.   Where an indivisible promise is founded upon two considerations, one of which is legal and the other illegal, the promise cannot be enforced.

11. Principal and Surety: Indemnity Bond to Sheriff.   Therefore, where a surety executes an indemnity bond to a sheriff, the sheriff agreeing to pay the proceeds of the execution to the surety, to be held as security against liability on the bond, neither the principal nor any one authorized by him signing such instrument, *held*, that the surety was not liable on the bond.

12. Instructions: Conflict: Review.   A judgment will not be reversed because of conflicting instructions when that instruction least favorable to the party complaining was more favorable than the law warrants.   In such case the conflict in the instructions and the error therein are not prejudicial.

Error from the district court of Harlan county.   Tried below before Gaslin, J.

See opinion for statement of the case.

*C. C. Flansburg,* for plaintiffs in error:

The plaintiffs contend that an attorney by signing a bond as surety is bound as such when the bond is approved. (*Tessier v. Crowley,* 17 Neb., 209.)

L. B. McManus was a joint trespasser with the sheriff. (*Sprague v. Kneeland,* 12 Wend. [N. Y.], 161 ; *Shaw v.*

*Rowland*, 32 Kan., 154; *Peterson .v. Foli*, 67 Ia., 402; *Walker v. Wonderlick*, 33 Neb., 504.)

By giving the bond the defendants became responsible for the continuance of the wrongful possession and for the sale, transfer, and conversion of the goods, and are liable for all damages plaintiffs sustained. (*Lovejoy v. Murray*, 3 Wall. [U. S.], 1; *Lewis v. Johns*, 34 Cal., 629; *Davis v. Newkirk*, 5 Denio [N. Y.], 92; *Ford v. Williams*, 13 N. Y., 584; *Ball v. Loomis*, 29 N. Y., 412.)

The rights of plaintiffs to proceed upon the bond should be determined in the same manner as though the action was brought by Peter Roth. (*Dillon v. Schofield*, 11 Neb., 423; *Richards v. Yoder*, 10 Neb., 431; *Wilson v. Burney*, 8 Neb., 43; *Eaton v. Hasty*, 6 Neb., 425; *Burr v. Boyer*, 2 Neb., 268.)

The attorney of the execution creditor had power under his original retainer to authorize the sheriff to depart from the regular and orderly course of execution; and when the attorney gave the sheriff specific directions as to his course of procedure, the latter became the agent of the party for whom the attorney acted. (*Sheldon v. Risedorph*, 23 Minn., 519; *Schoregge v. Gordon*, 29 Minn., 367; *Gorham v. Gale*, 7 Cow. [N. Y.], 740.)

The continued employment of the attorney after judgment may be regarded as vesting in him authority to collect the judgment by the usual modes, and to use the usual expedients, hostile or otherwise, for this purpose; and promises by the attorney bind the creditor, though not assented to by the latter at the time. (Wharton, Agency, sec. 589; *Jenney v. Delesdernier*, 20 Me., 183; *Read v. French*, 28 N. Y., 285; *Erwin v. Blake*, 8 Pet. [U. S.], 18; *Scott v. Seiler*, 5 Watts [Pa.], 235; *Lynch v. Commonwealth*, 16 S. & R. [Pa.], 388; *Nelson v. Cook*, 19 Ill., 440; *Corning v. Southland*, 3 Hill [N. Y.], 552; *Hyams v. Michel*, 3 Rich. [S. Car.], 303; *Hopkins v. Willard*, 14 Vt., 474; *Willard v. Goodrich*, 31 Vt., 597; *Gorham v. Gale*, 7 Cow. [N. Y.],

739; *Day v. Wells,* 31 Conn., 334; *Steward v. Biddlecum,* 2 N. Y., 103; *Silvis v. Ely,* 3 Watts & St. [Pa.], 420.)

The obligors signing the bond are liable thereon though the bond was not signed by the principal, the officer having sold the goods and applied the proceeds on the execution, and judgment was subsequently recovered against him for the value of the goods. (*Bollman v. Pasewalk,* 22 Neb., 761; *State v. Bowman,* 10 O., 445.)

The defendant McManus cannot now question the genuineness or the authority of the signature of Blanche L. Foster to the bond. (*Lombard v. Mayberry,* 24 Neb., 684; *Bigelow v. Comegys,* 5 O. St., 256; *United States v. Linn,* 15 Pet. [U. S.], 290; *Parker v. Bradley,* 2 Hill [N. Y.], 584; *Artcher v. Douglas,* 5 Denio [N. Y.], 509.)

Sureties are bound by recitals. (*Martin v. Bolenbaugh,* 42 O. St., 508.)

*W. S. Morlan, contra:*

It is admitted that Blanche L. Foster is bound by the acts of her attorneys within the scope of their authority; and as such attorneys they might, in her name, execute an appeal bond and various other bonds, but had no authority to execute an indemnity bond. (1 Am. & Eng. Ency. Law, 957; *Snow v. Hix,* 54 Vt., 478; *Averill v. Williams,* 4 Denio [N. Y.], 295; *Welsh v. Cochran,* 63 N. Y., 181; *Schoregge v. Gordon,* 29 Minn., 367; *Clark v. Randall,* 9 Wis., 135*.)

Some authorities hold that an attorney may execute an indemnity bond when his client is at a distance and cannot be consulted; but no case is cited and none has been found holding that where the client can be consulted that the attorney has, without his client's consent, authority to direct a levy on property claimed by another. (*Sheldon v. Risedorph,* 23 Minn., 519; *Gorham v. Gale,* 7 Cow. [N. Y.], 740.)

A bond executed by the sureties only, and not by the

person named as principal, does not bind the sureties. (1 Am. & Eng. Eney. Law, 457; *Wood v. Washburn,* 2 Pick. [Mass.], 24; *Bean v. Parker,* 17 Mass., 591; *People v. Hartley,* 82 Am. Dec. [Cal.], 758.)

There can be no action maintained on the bond because the sheriff failed to perform the contract to turn the proceeds of the sale over to McManus. (*Babcock v. Deford,* 14 Kan., 408; *Bradley v. Washington, Alexandria & Georgetown Steam-Packet Co.,* 13 Pet. [U. S.], 89; *Lapham v. Whipple,* 8 Met. [Mass.], 59; *Lewis v. Gray,* 1 Mass., 297; *Weeks v. Medler,* 20 Kan., 57.)

The agreement that the amount realized from the sale of the property levied upon should be turned over to McManus during the litigation is surely not against public policy, for the reason that the attorneys had a right to receive the money realized from the sale and therefore the right to control it.

IRVINE, C.

The plaintiffs in error were the plaintiffs in the district court and in their petition they allege that one Charles H. Brown had for a certain term been sheriff of Harlan county; that plaintiffs were sureties on his official bond; that while Brown was sheriff the defendant Blanche L. Foster caused an execution to be issued on a judgment in her favor against certain persons named; that in consideration of Brown's proceeding to sell certain property levied upon under such execution and claimed by Peter Roth, a stranger to the writ, the said Blanche L. Foster, together with the defendants John Dawson and L. B. McManus, executed to Brown a bond of indemnity conditioned to pay him the penal sum thereof if the property so levied upon was not the property of the judgment debtors or either of them; that in consideration of said bond Brown sold the property; that Roth began an action against him in replevin and recovered judgment; that Brown was insolvent

and unable to pay said judgment and Roth brought suit against the plaintiffs and recovered a judgment, which they were compelled to pay; that Brown had assigned the indemnity bond to the plaintiffs and that the defendants had been notified of the pendency of the proceedings alleged, and required to defend the same, and to hold Brown harmless; but they had failed so to do. The record shows neither service upon nor appearance by the defendants other than McManus. He filed an answer, and the questions litigated were those raised between him and the plaintiffs. His answer set up several defenses or facts alleged to constitute defenses. The assignments of error and the argument in this court relate to only two of these and they alone will be considered. One of these was that the indemnity bond sued upon was never signed by Blanche L. Foster, the principal, and that her attorneys had no authority to sign the same, a fact alleged not to have been known to McManus when he signed. The other defense involving questions presented here was that Brown agreed with McManus, with the consent of Blanche L. Foster's attorneys, that in consideration of McManus signing the bond the proceeds of the sale of all the property levied upon should be paid to McManus, to be by him held until the end of all litigation in regard to the ownership of the property, and if anything should be recovered on the bond, if sued upon, McManus should use the money so received to discharge such liability; that Brown had sold the property for $1,347, had wrongfully paid to the attorneys for Mrs. Foster $940 thereof, and had converted the remainder to his own use, and had never paid any of the proceeds of the sale to McManus. It may be here remarked that the answer also alleged that the indemnity bond was invalid, for that McManus' co-surety, Dawson, was an attorney at law and, therefore, not a proper surety under section 14, chapter 10, Compiled Statutes, providing that no practicing attorney shall be taken as surety on any bond in any

legal proceedings in the district in which he may reside. We do not understand that this defense is now insisted upon, but it may be safe to remark that it is not well taken. A practicing attorney should not sign a bond in a legal proceeding as surety; if he sign such a bond, the clerk should refuse to approve it; but if he do sign the bond, and if it be approved, he is estopped from alleging its invalidity, and it may be enforced both against him and the other parties thereto. (*Tessier v. Crowley*, 17 Neb., 207.) .

There was a verdict and judgment in favor of McManus, to reverse which plaintiffs assign seven errors. A consideration of the assignment that the verdict was not sustained by the evidence necessarily involves a determination of all the questions arising under the special assignments. A consideration of the sufficiency of the evidence therefore disposes of all questions presented and the special assignments will not be noticed by themselves. There is one assignment relating to the admission of evidence which would not fall within the foregoing remark, but it is not discussed in the briefs and will, therefore, be deemed to be waived. The evidence is somewhat conflicting upon the minor points, but not upon the principal facts. It shows, or tends to show, that Brown having as sheriff received an execution on a judgment in favor of Blanche L. Foster against certain persons, he was about to levy on property found in the possession of the judgment debtors. He was informed that the property belonged to Peter Roth. He took an inventory thereof, but did not complete his levy and refused to proceed unless indemnified. The attorneys of Mrs. Foster were John Dawson and T. Judson Ferguson. Mr. Dawson asked McManus to sign the bond, and McManus offered to do so if the proceeds of sale were turned over to him to hold as security until the litigation was ended. They then went to Mr. Brown and the same statements were made. An understanding was reached that such disposition should be made of the money. The bond

was then signed as follows: "Blanche L. Foster, by T. Judson Ferguson, her att'y, John Dawson, L. B. Mc-Manus." The sheriff completed his levy and was proceeding to sell the property when Roth commenced the replevin suit. He failed to give bond and the action proceeded as one for damages, resulting in a judgment against Brown in favor of Roth. In the meantime Brown had sold the property under the execution, Ferguson and Dawson bidding in a portion thereof, paying no cash therefor, with the purpose of their bids being credited upon the judgment. The remainder of the money was paid to Dawson and deposited in the bank of which McManus was president. It is uncertain in what manner this payment was made, but the deposit was certainly to the credit of Dawson, the money was checked out by him and it was not paid to McManus or placed in anywise under his control. Roth being unable to realize on his judgment in the replevin suit, sued the plaintiffs on the sheriff's official bond and recovered judgment which the plaintiffs paid. It very clearly appears that Mrs. Foster, at the time the bond was given, lived in Alma, where the events took place; that Mr. Ferguson also lived there and could have consulted her in regard to the bond or any other matter; that he did not do so, and that she was for a long time after all the events complained of, ignorant of the fact that the bond had been given and of all the circumstances connected with the levy and the sale. On this state of the case McManus contends that Ferguson had no authority to execute the bond on behalf of his client, and that there being no authorized execution by the principal he, as surety, is not bound. Further, that if Ferguson had authority to execute the bond, Dawson as co-attorney had authority to make the collateral agreement whereby the proceeds of the sale were to be deposited with McManus as security, and that this agreement being made with the sheriff as well as the judgment creditor, was binding and not against public policy, and the failure to perform dis-

charged McManus' liability. On the other hand, the plaintiffs contend that Mrs. Foster's attorney, by virtue of that relationship, had authority to execute the bond on her behalf. If he had not, it would still be binding on the sureties; but beyond this there was no authority to bind her by the agreement that the sheriff should pay the proceeds of the sale to McManus, and in any event parol evidence would be inadmissible to establish such an agreement. The plaintiffs also contend that McManus, by signing the indemnity bond, became an actor and a participant in the unlawful proceedings of the sheriff, and that there arose from such act a liability *ex delicto* in favor of Roth against McManus; that by the payment of the judgment procured against plaintiffs by Roth, plaintiffs became subrogated to Roth's right of action against McManus. We need not inquire as to the soundness of this theory of subrogation because the plaintiffs have not based their action on any such claim. They have sued upon the bond of indemnity and traced their rights thereunder and not through Roth's. Under the Code, as well as at common law, the *allegata et probata* must agree. (*Traver v. Shaefle*, 33 Neb., 531; *Imhoff v. House*, 36 Neb., 28.) The petition counting upon the bond of indemnity and the liability accruing thereunder, the plaintiffs could not be permitted to introduce evidence and recover upon a liability *ex delicto*, the advantages of which accrued to them, if at all, from an entirely different source.

With these incidental questions disposed of, the first question essential to the determination of the case is whether or not Ferguson, as Mrs. Foster's attorney, had authority to execute the indemnity bond on her behalf. It is not pretended that any special authority existed, and if any authority existed it was by virtue of the general employment of Ferguson for the purpose of prosecuting the action resulting in the judgment on which the execution was issued. It must be assumed that Ferguson's general

authority did not cease with the procurement of the judgment. If there be any doubt as to the continuance of an attorney's employment in this state after judgment, it does not arise in this case, for the evidence shows that Mrs. Foster did contemplate the collection of the judgment by Dawson and Ferguson, and she ratified their action by receiving a portion of the proceeds of the execution. This was not, however, a ratification of Ferguson's act in executing the indemnity bond, because the evidence shows that when she received the money she was not aware that any such bond had been made or that there was an adverse claim to the property levied upon. The inquiry, therefore, limits itself to the question whether an attorney authorized to collect a judgment has implied authority to sign his client's name to a bond of indemnity running to the sheriff to protect him against adverse claims to the property levied upon. The general authority of an attorney by virtue of his employment has been well stated as including the doing on behalf of his client of all acts in or out of court necessary or incidental to the prosecution or management of the suit and which affect the remedy only and not the cause of action. (*Moulton v. Bowker*, 115 Mass., 40.) Substantially similar language has been used by many courts in defining the general authority of attorneys. The authority is usually plenary on all matters affecting the remedy, but does not at all exist in regard to matters affecting the substantial rights of the client to enforce which the attorney is employed. This distinction may readily be illustrated. An attorney employed to make collections has no authority to release a surety on a note (*Stoll v. Sheldon*, 13 Neb., 207); nor to compromise a valid judgment (*Hamrick v. Combs*, 14 Neb., 381); nor may he compromise his client's cause of action even under the cloak of an award which was pre-arranged (*Holker v. Parker*, 7 Cranch [U. S.], 436). The foregoing acts affect the cause of action; but with respect to procedure and matters affecting the remedy alone

the client is presumed to confer on the attorney authority
to do all things which the latter, by virtue of his superior
legal knowledge, deems necessary or proper. (*Foster v.
Wiley*, 27 Mich., 244.) Thus, the attorney may consent to
selling attached property of a perishable nature. (*Nelson
v. Cook*, 19 Ill., 440.) He may agree that if a foreclosure
sale is had pending an appeal the proceeds shall be de-
posited in court subject to the final determination of the
case. (*Halliday v. Stuart*, 151 U. S., 229.) So it has been
held that he may release an attachment. (*Moulton v.
Bowker*, 115 Mass., 36; *Jenney v. Delesdenier*, 20 Me.,
183.) We have stated and illustrated the general rule be-
cause it goes far towards reconciling the many cases ap-
parently conflicting with one another which have been
cited as affording analogies to the case at bar. It must be
remembered, however, that the rule is but general and
does not supply an absolute test. Thus, an attorney can-
not authorize an execution to issue against his client
when a proper supersedeas is on file. (*State Bank of Ne-
braska v. Green*, 8 Neb., 297.) The exception in the ap-
plication of the rule seems to be that in a matter af-
fecting the remedy the attorney cannot, without special
authority, perform acts which sacrifice his client's substan-
tial rights or involve him in new liabilities to third per-
sons. It is probable that this distinction may account for
the fact that the New York courts have held that an at-
torney may conduct proceedings in aid of execution to reach
the judgment debtor's choses in action (*Steward v. Biddle-
man*, 2 N. Y., 103); but may not direct a levy upon par-
ticular property (*Averill v. Williams*, 4 Denio [N. Y.], 295;
*Welsh v. Cochran*, 63 N. Y., 181). So, in the absence of a
statute authorizing it, it is not a professional duty to pro-
vide security for appeal (*Winborn v. Byrd*, 92 N. Car., 7;
*Churchill v. Brooklyn Life Ins. Co.*, 92 N. Car., 485); and,
therefore, he may not sign on behalf of his client an appeal
bond (*Ex parte Holbrook*, 5 Cow. [N. Y.], 35; *Clark v.

*Courser*, 29 N. H., 170). In the latter case the decision rested partly on the ground that authority to execute a sealed instrument must be created by instrument under seal. Our statute (Compiled Statutes, ch. 7, sec. 7) gives to an attorney power to execute in the name of his client a bond for an appeal, *certiorari*, writ of error, or any other paper necessary and proper for the prosecution of a suit already commenced. This statute clearly extends the authority of an attorney so far as to authorize him to bind his client by any bond or undertaking which the law requires or authorizes in the direct prosecution of an action; but the general term must be construed with reference to the particular terms preceding, and we cannot regard the statute as extending the attorney's power to the execution of bonds not judicial or statutory, but voluntary and collateral to the main purpose of the action. It has been held that where the client resides at a distance an attorney employed to collect debts has implied authority to indemnify the officer. (*Clarke v. Randall*, 9 Wis., 135*; *Schoregge v. Gordon*, 29 Minn., 367.) In each case emphasis was placed upon the fact of the client's absence, from which it must have been contemplated that exigencies were likely to occur requiring, for the client's protection, prompt action before communications could be had and specific instructions obtained, and the authority is implied from that feature of the situation. The absence of the client as extending the attorney's authority is also referred to and the same reasons advanced in *Scott v. Seiler*, 5 Watts [Pa.], 235, and *Hopkins v. Willard*, 14 Vt., 474. In this case the client was a neighbor of the attorney and could have been readily consulted, a fact known to both surety and sheriff.

From this review of the authorities we conclude that the implied authority of an attorney to bind his client in matters affecting the remedy does not generally exist where the act performed is such as to devolve upon the client new liabilities to third persons; that this exception prevents an

attorney from directing a levy upon property claimed by a
stranger and executing on behalf of his client a bond to
indemnify the sheriff from the consequences of such levy;
that while such authority may be implied in case of an ab-
sent client, it is then implied from the impossibility of ob-
taining special instructions in such case and the intention
presumed therefrom of committing to the attorney a wider
discretion. Such authority will not be presumed 'merely
from the relationship of attorney and client where it is
practicable for the attorney to consult the client and obtain
special directions. If Ferguson had no authority to sign
Mrs. Foster's name to the bond, it follows, *a fortiori*, that
Dawson had no authority to bind. Mrs. Foster by the col-
lateral agreement that the proceeds of the sale should be
paid to McManus in consideration of his signing the bond
as surety. Ferguson being without authority to execute
the bond on behalf of Mrs. Foster, the question then arises
as to the effect of that want of authority on the liability of
McManus. It was held in *Bollman v. Pasewalk*, 22 Neb.,
761, that such a bond, voluntarily given, bound the surety
although the principal did not sign it; and in *Lombard v.
Mayberry*, 24 Neb., 674, it was said that the surety who
signs an obligation after the names of others admits with-
out warranty the genuineness of those signatures, and if
such names be forged without his knowledge and without
complicity of the holder, it is no defense to the surety that
he believed such signatures were genuine. This case is
somewhat peculiar, in that on one hand it does not present
a case of incomplete execution, and on the other hand that
it does not present a case such as suggested in the last case
cited of a forgery unknown to the surety as well as to the
obligee. Here it must be held that as a matter of law both
McManus and Brown were bound to know that the signa-
ture of Mrs. Foster's name by Ferguson was unauthorized.
We think here there is greater reason for holding the sure-
ties than in *Bollman v. Pasewalk*, where execution by the

principal may have been contemplated. McManus and Brown both being aware that the signature of Mrs. Foster was unauthorized, we think McManus must be held to have executed the obligation voluntarily and absolutely, and that the want of execution by Mrs. Foster is in itself no defense for McManus. The inquiry, therefore, as to Ferguson's authority would be in a measure irrelevant but for the manner in which it affects the validity of the agreement in regard to the disposition of the proceeds of sale.

We are now brought to a consideration of the questions arising upon the agreement referred to. It is urged by the plaintiffs that McManus will not be permitted to show any such agreement because it would contradict and vary the terms of the bond. In support of this contention we are cited to *Bigelow v. Comegys,* 5 O. St., 256, and *Martin v. Bolenbaugh,* 42 O. St., 508. Neither of these cases is in point. *Bigelow v. Comegys* simply held that the obligor of a bond could not avoid his liability by showing that his signature was obtained by fraud of one of his co-obligors without participation of the obligee; while *Martin v. Bolenbaugh* held that the obligors in an indemnity bond were estopped to deny the recital that the goods in controversy were claimed by other persons than the defendant in the action. On the other hand, it has been held in this state, following the general rule, that evidence can be received of a contemporaneous distinct oral agreement upon the performance of which the written contract was to depend. (*Norman v. Waite,* 30 Neb., 302; *Barnett v. Pratt,* 37 Neb., 349.) Furthermore, parol evidence is always admissible in the case of simple written contracts to prove that there was no consideration or that the consideration was illegal. (1 Greenleaf, Evidence, 304; *Rawson v. Walker,* 1 Stark. [Eng.], 361; *Folsom v. Mussey,* 8 Greenl. [Me.], 400; *Barker v. Prentiss,* 6 Mass., 430.) The reason of such cases as hold the contrary in regard to bonds is that a bond being under seal it imports a consideration, but our

statutes having abolished the use of seals we must treat this instrument as a simple contract. The incidents of the seal fell with the seal itself. It was, therefore, proper to admit the evidence of the parol agreement. Was this a valid agreement? It is upon this question that the want of authority of Mrs. Foster's attorneys to act for her becomes important. There can be no doubt that our Code contemplates that the sheriff shall himself disburse the money received on execution, and that he is not under an ordinary execution required to pay it into court for disbursement there. There is no direct provision in that behalf, but by section 513 the sheriff is subject to amercement for refusing or neglecting to pay over to the plaintiff, his agent or his attorney of record, all moneys by him collected or received for the use of such party. By section 507 the sheriff is required, if the sale realizes more than is sufficient to satisfy the writ, to pay the balance to the defendant, and by section 517 the sheriff to whom an execution has been issued from another county is authorized, at the instance of the plaintiff, to return the money by mail. The sheriff was then authorized to pay the proceeds of the execution directly to the plaintiff, and it follows that he might have paid them to a third person at the plaintiff's instance and would be guilty of no breach of duty in so doing. If, therefore, it had appeared that the acts of Ferguson and Dawson, in procuring the execution of the indemnity bond and in agreeing that the proceeds of the sale should be paid to McManus, had been authorized by Mrs. Foster, the sheriff would have then been justified in agreeing to so dispose of the money; but we have held that neither the signing of the bond, nor the making of the collateral agreement, was within the authority of the attorneys, and this being so the sheriff had no right to pay the money realized on execution to any one but Mrs. Foster, her agent or attorneys of record; nor had he any right to agree to so do. The making of the bond by McManus was in consideration, first, that Brown would

proceed to sell the goods, and second, that he would pay the proceeds to McManus instead of the plaintiff or her attorneys of record. The latter consideration was illegal. When any portion of the consideration is illegal the promise cannot be enforced unless there are several promises, and that which relates to the bad consideration can be distinguished and separated from the others. In other cases the promise is unenforceable. All the text-writers so state the rule. (See, for instance, Wharton, Contracts, 339; Anson, Contracts, 191; Pollock, Contracts, 338.) The rule is so well settled that a reference to the adjudications is unnecessary. It may be well to remark, however, that it has been recognized in *McCann v. McLennan*, 3 Neb., 25, and that the earliest case usually cited in support of the rule is very similar to that we are considering. (*Featherston v. Hutchinson*, 1 Cro. Eliz. [Eng.], 199.) It follows from the foregoing discussion that the evidence sustains the verdict, and, as we have already said in examining this question, we have incidentally determined all others presented.

The plaintiffs complain that certain instructions were conflicting. This is true. In one instruction the jury was told, in effect, that McManus would not be liable provided the sheriff failed to comply with the agreement in regard to disposing of the money realized. By another instruction the jury was told that the failure to so dispose of the money would not affect McManus' liability. In the view we take of the law McManus' freedom from liability did not depend upon the breach of the agreement but upon the fact that the agreement was illegal and so defeated the promise founded thereon. Of the conflicting instructions, therefore, that least favorable to the plaintiffs was still more favorable to them than the law warranted, and the giving of these instructions was, therefore, not prejudicial. Judgment

AFFIRMED.