GEORGE OBERNE ET AL. V. GEORGE BURKE ET AL.

FILED MARCH 3, 1897. No. 7134.

1. **Principal and Agent**: RATIFICATION: EVIDENCE. A ratification by a principal of the unauthorized act of his agent may be inferred from the conduct of the former inconsistent with any intention other than a purpose to adopt such act as his own.

2. ———: ———: ———. *Held,* From an examination of the evidence, (1) that the contract sued on, pledging defendants' credit, is within the scope of the authority of their agent by whom it was executed; (2) granting such contract to have been unauthorized and void when executed, the jury were warranted in finding that it has been subsequently ratified by the defendants.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J. *Affirmed.*

*Montgomery, Charlton & Hall,* for plaintiffs in error.

*Hall, McCulloch & Clarkson, contra.*

POST, C. J.

This is a proceeding prosecuted by the plaintiffs in error, hereafter called the defendants, to reverse a judgment of the district court for Douglas county based upon the following instrument:

"SOUTH OMAHA, NEB., April 26, 1897.

"*M. Burke & Sons, U. S. Yards, Neb.*—DEAR SIRS: We will guaranty the payment by R. Kunath in thirty days the sum of seven hundred ninety-one and 28-100 dollars for seventeen head of cattle.

"OBERNE, HOSICK & CO.,
"Per HARMON."

By the answer interposed below every allegation of the petition is put in issue; however, the only substantial controversy relates to the authority of Harmon, who signed the foregoing agreement, to bind the defendants by contracts of like nature executed in their name. A former judgment in favor of the plaintiffs below was reversed by this court on the ground that the contract sued on was not shown to be within the scope of the authority of the agent by whom it was executed, or that it had been subsequently ratified by the defendants. (See *Oberne v. Burke*, 30 Neb., 581.) In addition to the facts stated in the opinion cited there was, on the second trial, evidence tending to prove that one Bush, who had the general charge and supervision of the defendants' business at Omaha, was absent from the state for the period of a month or more immediately preceding May 1, 1887, and that the said Harmon was, with the knowledge and approval of defendants, left in charge of their said business during his absence. There is, it is true, a suggestion to the effect that Harmon was a mere subagent of Bush, and that, granting the power of the latter to bind defendants by contracts like that here involved, such authority implies the exercise of a personal judgment and discretion which cannot, without the consent of the principal, be delegated to another. But there was evidence which warranted the jury in finding that Harmon was not a mere subagent; that he was, on the contrary, the accredited representative of the defendants, and clothed with whatever authority was possessed by Bush in the conduct and management of the business at Omaha. It was also shown by the testimony of Bush that he returned to Omaha about May 1, or five

days subsequent of the agreement above set out; and Mr. Hosick, one of the defendants, being asked when his firm first learned of said agreement, answered, "Mr. Bush wrote us about it on his return home." It does not appear that notice was given by defendants of the repudiation of the agreement in their name until maturity of the debt thereby assumed, while one of the plaintiffs, George Burke, testified that no communication whatever was received from defendants relating to said agreement until after default by Kunath, and dishonor of the draft drawn upon defendants in accordance with the terms of their guaranty; and the same witness, referring to the course of dealing with defendants, testified, in substance, that previous to the refusal of payment in this instance Bush's authority to pledge the credit of defendants' firm under like circumstances, although frequently exercised, had never been disputed. It may also be said to have been the practice of Bush, in the management of defendants' business, and in their name, to guaranty payment in favor of commission men for cattle sold to butchers with whom said firm had dealings, the purpose of such accommodations being to enlarge the firm's business in Omaha and vicinity. The evidence shows also that all previous guaranties were kept good, and in closing up several of such transactions drafts were drawn upon the defendants in their firm name and which were paid by the firm's checks. It was customary for one of defendants to visit Omaha as often as once in six months and on such occasions to examine into the condition of the firm's business, by ascertaining the amount of cash on hand, and in bank, and inspecting checks drawn against its bank account. The canceled checks drawn in payment of bills thus guarantied by Bush were, it is fair to presume, submitted to the scrutiny of the defendants and were sufficient of themselves to put the latter upon inquiry touching the course of dealings in their name. The evidence is, we think, quite sufficient to sustain the finding that defendants were advised of Bush's practice to

guaranty payment in behalf of patrons of the firm in Omaha and vicinity, and that such practice was within the scope of the authority of said Bush as the defendants' managing agent.

We are also of the opinion that a ratification of Harmon's act in pledging defendants' credit may be implied from the facts and circumstances in evidence. In addition to the failure, above commented on, to give notice of the repudiation of the alleged unauthorized agreement until after default by Kunath, the party primarily liable to plaintiffs, it is conclusively shown that defendants at the time in question held a chattel mortgage upon his, Kunath's, butcher shop, tools, and fixtures for $1,500, of which amount $1,075 represented an indebtedness previously assumed by defendants for the mortgagor, and the balance, $425, was to secure future advancements of money or cattle by defendants. It is also established beyond controversy that Bush, upon being notified of the guaranty by Harmon in defendants' name, and before maturity of the debt which was the subject of that contract, induced Kunath to surrender to him the property covered by said mortgage, and which was by agreement disposed of at private sale on defendants' account. Kunath, who was called as a witness for plaintiffs, testified, in referring to the foreclosure of the mortgage, as follows:

Q. When you turned over all the property under that mortgage, did the amount you owed him at that time, and for which the mortgage was taken, include the $791 for these cattle? [Referring to the indebtedness mentioned in the contract of guaranty.]

A. Yes, sir.   *   *   *

Q. At the time Oberne, Hosick & Co. took your property under this mortgage, about what amount were you owing them outside of this $791?

A. In the neighborhood of $400.

The foregoing statement, so far as it relates to the application to be made of the proceeds of the mortgaged property, is not expressly contradicted by Bush, who tes-

tified in behalf of defendants. It is not seriously contended that the act of Bush in accepting the mortgage here mentioned, or the subsequent foreclosure thereof in the name of the defendants, was in excess of his authority as managing agent of the latter. A review of the authorities bearing upon the proposition here involved would be a profitless task. It is sufficient that a ratification will be implied from the conduct of the person in whose behalf another has assumed to act, clearly inconsistent with any intention other than a purpose to adopt such act as his own. (Mechem, Agency, sec. 146 *et seq.;* 1 Am. & Eng. Ency. of Law [2d ed.], 1195; *Johnston v. Milwaukee & Wyoming Investment Co.,* 49 Neb., 68; *Farmers & Merchants Bank of Elk Creek v. Farmers & Merchants Nat. Bank of Auburn,* 49 Neb., 378.) Granting, therefore, that the contract sued on was in the first instance unauthorized and void, the jury were warranted in finding that it has been subsequently ratified by the defendants, such being the reasonable and logical, if not, indeed, the necessary, inference from defendants' conduct as shown by the evidence above cited.

There are other assignments presented by the arguments of counsel, but which, in view of the conclusion above stated, do not call for notice at this time. There being no error in the record, the judgment is

AFFIRMED.