McCORMICK HARVESTING MACHINE COMPANY v. JOHN G. GUSTAFSON.

FILED MARCH 17, 1898.   No. 7906.

Action on Note: ANSWER: COUNTER-CLAIM. In an action for judgment on certain promissory notes the defendant answered that the notes had been given for a combined reaper and binder, in place of which, if it did not work to defendant's satisfaction, plaintiff had agreed to furnish a new machine. *Held*, That proof by defendant that the machine had been made to work to his satisfaction at one time, but that afterwards it had failed to work well, did not entitle the defendant, under the averments of his answer, to establish a counter-claim for damages and thus cancel the notes given by him.

ERROR from the district court of Wayne county. Tried below before ROBINSON, J.   *Reversed.*

*A. A. Welch*, for plaintiff in error.

*Frank Fuller*, contra.

RYAN, C.

The McCormick Harvesting Company sought judgment in the district court of Wayne county upon three promissory notes made to it October 13, 1891, by John

G. Gustafson.   In his answer the defendant alleged that he purchased from plaintiff a self-binder and reaper for which the notes sued on were given; that at the purchase of said machine and executing the notes the plaintiff warranted said machine to do good work and to defendant's satisfaction, and that thereupon defendant purchased said machine and executed said notes.   It was alleged in the answer that the machine neither did good nor satisfactory work, and that plaintiff, though notified of the failure in these respects, had failed to make the machine work, from which failure it was alleged that the defendant had been greatly damaged, as the machine was worthless and of no value to him.   It was furthermore averred in the answer that plaintiff had promised and agreed with defendant that if said machine did not do good work and to defendant's satisfaction, plaintiff would take back the machine and replace it with a new one, and that defendant had notified plaintiff of the defective working of said machine, but that plaintiff had failed, neglected, and refused to replace said machine with a new one and comply with the terms of its agreement in that regard, whereby defendant had been damaged in the sum of $200, for which sum he asked judgment.   By a reply these allegations were denied, and on a trial there was a verdict for defendant, upon which verdict a judgment was rendered for costs.

The above averments of the answer may be reduced to a simpler form.   They were, in effect, first, that the machine was sold with a warranty that it would do good work satisfactorily to defendant;   second, that if this warranty failed, plaintiff would furnish a new machine; third, that it had failed to fulfill the warranty; and, fourth, that plaintiff, upon being notified of this failure, had neglected and refused to furnish a new machine, by reason of which failure the defendant had been damaged. in the answer there was no denial, except that "Defendant * * * denies that he is in any way indebted to plaintiff."   With only this denial of a mere conclusion

plaintiff was entitled to a judgment for the amount of its notes, unless the four above propositions were established by the proofs. We shall therefore consider the evidence, especially as it bears upon the last of these propositions. The machine was sold to Gustafson about the middle of July, 1891. From the testimony of the defendant himself it seems that he used this machine in the summers of 1891 and 1892 for cutting all his small grain, but that during both of these seasons he made repeated complaints to the agents of plaintiff that the machine failed to do good work, and that in consequence of these complaints experts for the plaintiff frequently endeavored to put it in running order. In the year 1893 there was trouble with the machine again, and plaintiff sent another expert, whose efforts seem, from defendant's evidence, to have been more successful than any preceding efforts. At this point we shall take up the testimony of the defendant in his own language, which was as follows:

Q. Did he succeed in making it work?

A. Well, he worked with it not very much; stood there in the yard a while and he told me to go and hitch up the horses, and we went into the field and cut two acres and he got it to bind about half more than before, and he got it to bind so that it would not miss only now and then. And we went round—we cut about two acres, about an acre and a half in the piece I had left, and we went around the wheat field with twenty-five acres in, and I would not say that I missed more than one or two sheaves.

Q. How did it work after that?

A. He said come to town. We had a full talk out there. I said, "It is a shame to let me go this way if there was a man that could fix it and then have men come all the way from Omaha and work hard and could not make it work," and I said, "You come and don't work hard and you make it work," and he said, "Come to town this afternoon and pay for that machine," and I said, "I

show you," and I said, "You fix it sooner;" and I went to town,—thought I would see somebody that would know something about it,—and I said, "The machine is running lots better now, and if the machine works that way I will pay for it." * * * Well, he, this general agent, wanted me to pay. I got some letters from him. I cannot think what his name is till I look at it. It is the one that was here last time. He said I should pay them notes. I said, "I won't till I cut the rest of it, and if it keeps that way I shall, and if it goes back I won't;" and he says, "You have to," and he said, "I sue and beat you and take it to the supreme court."

Q. What did he do after that?

A. Nothing, and I haven't seen anything of them since.

Q. You went back and tried to cut with it?

A. I went back and it went back and wouldn't cut again, and I just left it and bought me another machine.

If the verdict of the jury can be at all sustained it must be upon this testimony alone, for none of defendant's witnesses testified to more than the failure of the machine to do good work, while the testimony of such witnesses of plaintiff as testified to this transaction was to the effect that at this trial of the machine it did work which was good and perfectly satisfactory to the defendant. It is true there was other evidence, for instance on behalf of plaintiff, that the failure was alone that of the binding apparatus, which could have been replaced at a trifling expense, but these facts were not pleaded. For the defendant there was testimony that after the above trial of the machine it became as worthless as before; but this consideration could not avail the defendant, for, tested by the averments of his answer, his relief was confined to the substitution of a new machine if that which he had purchased did not work to his satisfaction. According to his own testimony the defendant's latest expression to plaintiff or to plaintiff's agent, was of his satisfaction with the working of the machine. On the theory of his answer he was entitled to have his machine

repaired and made to work satisfactorily, and to the efforts to bring about these results he had a right to fix a limit at which a new machine must be furnished him. Under the averments of his answer, however, his remedy was strictly confined to this right of substitution. In other words, if the first machine did not work to suit him, he had an option to exchange it for another, but until this option was exercised and a new machine was denied him, he was not entitled to plead damages by way of counter-claim against the amount of his notes. This remedy was not available as a defense in the strict sense of that term, it was rather a counter-claim which, when it arose, might be pleaded affirmatively. When available the rule conforming the proofs to the pleading would be the same as is applicable to evidence offered to sustain the averments of a petition, and this rule is that the averments and proofs must correspond. (*Imhoff v. House*, 36 Neb. 28; *Powder River Live Stock Co. v. Lamb*, 38 Neb. 339; *Traver v. Shaefle*, 33 Neb. 531; *Luce v. Foster*, 42 Neb. 818.) The evidence did not sustain the defendant's counter-claim as pleaded and the judgment of the district court is therefore

REVERSED.