## FIDELITY & DEPOSIT CO. OF MARYLAND v. BURDEN (two cases).

Circuit Court of Appeals, Second Circuit.
February 4, 1929.

Nos. 130, 131.

L. Hand, Circuit Judge, dissenting.

Charles S. Aronstam, of New York City, for plaintiff in error.

Thomas E. White, of New York City, for defendant in error.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). ■ The obligations of Burden are to be ascertained from the terms of his applications. They were for supersedeas bonds, and it may be and indeed is argued that *any* such bonds, though to secure all the defendants, who appealed, would meet the terms of his applications. But such is an unreasonable interpretation of the acts of the parties. Burden was under no obligation to the other defendants, and had no reason that is apparent to furnish indemnity for them. He testified that all the other defendants, whose interests were hostile to his, were represented by separate attorneys, and he said that a representative of these others, and not of himself, employed Thompson & Robertson, who were suing to recover the value of their legal services. That he should intentionally secure against execution parties having interests adverse to himself is unlikely, and that he secured them negligently is not a result called for by the terms of his application.

■ It is contended that the words "supersedeas bond in U. S. Dist. Ct. So. Dist. of N. Y., Burden et al. Plffs. in error, * * *" meant a bond to secure *all* the plaintiffs in error. In no part of the applications were the names of the other plaintiffs in error given, and still less was there anything to indicate that the applications were for bonds securing any party but Burden. The words "et al." were merely descriptive of the action in which the bond was to be given.

■■ It may be that, if Burden had himself accepted bonds securing the other persons, there would have been a practical construction by the parties of their relations which would have required us to hold that the applications were for bonds to secure all the defendants who took an appeal. But it is quite a different matter to say that the acceptance of the bonds by Burden's attorney could have this effect. While an attorney has wide powers in the conduct of suits, even to the extent of consenting to the submission of a pending cause to arbitration (Holker v. Parker, 7 Cranch, 436, 3 L. Ed. 396; Alexandria Canal Co. v. Swann, 5 How. 83, 12 L. Ed. 60; Judson v. United States [C. C. A.] 120 F. 637; Gorham v. Gale, 7 Cow. [N. Y.] 739, 17 Am. Dec. 549; Williams v. Tracey, 95 Pa.

308), yet he has no implied authority to execute a contract of indemnity or to sign an appeal bond on behalf of his client (Luce v. Foster, 42 Neb. 818, 60 N. W. 1027; White v. Davidson, 8 Md. 169, 63 Am. Dec. 699; Ex parte Holbrook, 5 Cow. [N. Y.] 35; Schofield v. Felt, 10 Colo. 146, 14 P. 128; Clark v. Courser, 29 N. H. 170).

If he has no authority implicit in the relation of attorney and client to execute such agreements, how can authority to bind his client to pay the debt of a codefendant be implied from an employment to secure his own client against an execution? The ample authority implied from the relation of attorney and client relates to the conduct of suits and to means which are proper to the end in view. A supersedeas bond securing other defendants is not such a means, for it could benefit Burden in no way that is apparent. Inasmuch as his attorney had no implied power to accept the bonds as a fulfillment of the applications which Burden had executed, so far as they secured other parties, we cannot regard the acceptance of these bonds as adding anything to the liability which proper interpretation of the applications imposed upon Burden. We do not regard the situation as like the case where A offers to pay $200 for a horse and his agent accepts a white horse in fulfillment of the bargain when A intended to buy a black horse. A "supersedeas bond" has no such general meaning in the circumstances as the word "horse" in the illustration. The supersedeas bonds applied for were bonds for the benefit of Burden, and not to secure others as well. The analogy of the horse would be closer, if the horse accepted was accompanied by an agreement that others than the buyer should have the right to drive the animal half the time.

It does not follow from what we have said that Burden was under no liability when he signed the applications and the supersedeas bonds were filed. He had applied for bonds securing himself only. If bonds securing others were furnished, these bonds were to that extent outside of the terms of the applications; but, so far as they secured Burden, they were within their terms. Two of the other plaintiffs in error signed agreements of indemnity like his own, and, to the extent of the judgments rendered against them, they would be liable under these agreements. We cannot see that the provisions in the bonds affecting others bound Burden, nor can we regard the provisions for his own benefit as outside of the terms of his agreements of indemnity.

If the surety company expected Burden to furnish indemnity for the other appellants, it should have obtained from him applications clearly setting forth obligations so burdensome, so entirely opposed to his own interest, and so contrary to the legal interpretation of contracts of suretyship where the liability is strictissimi juris. National Banking Association v. Conkling, 90 N. Y. 116, 42 Am. Rep. 405, note. If the surety company is right in the position it takes, Burden, though victorious, would have been much better off, had he never appealed. Such a conclusion is not required by the written documents, and is too harsh to be accepted.

Judgment reversed.

L. HAND, Circuit Judge (dissenting). The application was an offer to pay the surety's loss on the bond in consideration of its execution. It became a unilateral contract when the surety performed, and the sole question is whether the promise then made was to pay any loss, or only a loss caused by Burden's failure to pay the judgment against himself. I grant that the written description in the offer might have covered only the judgment against Burden; I do not understand it to be disputed that it might equally have covered the joint judgment. The surety knew nothing about Burden's relations to the other defendants, or what might induce him to stand as an indemnitor for them. All it knew was that Burden asked for a bond and promised to stand behind it.

What judgment did Burden mean to secure, the joint or the several? The surety certainly supposed that he meant the joint judgment, because it gave such a bond, and it is absurd to suppose that it meant to be partially unindemnified; the transaction was strictly a business one. Had Burden accepted the bond himself, is it conceivable that he might later have said that it did not correspond with the offer? He had appeared satisfied with it, and the surety must have supposed that he was. A man's intent is not what he privately means, but what his conduct indicates. On the other hand, the promise was intended to cover the bond accepted, for, as I have said, the transaction had none but a business motive. To hold otherwise would be to limit the promisor's performance to only a part of what he must have understood the promisee to expect. One certainly may not exonerate himself from the natural understanding of his conduct by such mental reservations.

Now, it is true that Burden did not himself accept the bond, but left the application with his attorney and deputed him to accept

it. That, however, necessarily included the power to pass upon whether it was what he wanted. The attorney's authority did not depend upon the relation of attorney and client; it followed from the intention to be imputed from the facts. The attorney was authorized to do for Burden what Burden must have otherwise done for himself. His acts concluded Burden as much as though Burden had himself been the actor.

I think that the judgment should be affirmed.