CITIZENS STATE BANK OF THEDFORD ET AL., APPELLANTS, V. UNITED STATES FIDELITY & GUARANTY COMPANY, APPELLEE.

FILED MARCH 17, 1936. No. 29595.

*Squires, Johnson & Johnson* and *Evans & Lee,* for appellants.

*Clarence A. Davis* and *L. L. Abbott, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

This is an action at law brought by the Citizens State Bank of Thedford, Nebraska, and J. H. Figard, against the United States Fidelity & Guaranty Company of Baltimore, Maryland, to recover the sum of $3,000 alleged to have been entrusted to the defendant company for the sole purpose of indemnifying it against loss because of the execution of an appeal bond in the case of the Nebraska State Bank of Valparaiso, Nebraska, v. Citizens State Bank of Thedford, Nebraska, J. H. Figard and Otto J. May. The appeal bond in the sum of $5,500 was actually executed by the defendant

company; the appeal was perfected; the judgment appealed from was reversed in the appellate court (122 Neb. 522); and later, after remand, the action was dismissed in the trial court. These facts admittedly negative all liability on the part of the defendant company on the appeal bond, and entitle the plaintiffs in the instant case to the return of the property pledged as indemnity. The fundamental question is whether the duty to return this pledge, under the peculiar facts in this case, has been performed by the defendant company, or whether it has been guilty of the conversion of the same and thereby incurred a personal liability therefor.

After trial in the district court judgment was rendered for defendant, and plaintiffs appeal.

The facts disclosed by the record include the following: On March 17, 1930, in an action commenced in the district court for Furnas county by the Nebraska State Bank of Valparaiso (of Saunders county) against the Citizens State Bank of Thedford, Nebraska, and J. H. Figard, both of Thomas county, Nebraska, and another, a judgment for an amount definite was entered against the defendants. In this litigation, J. H. Figard was represented by Stevens & Stevens, a firm of attorneys composed of John Stevens and Wade Stevens, both of whom were residents of Furnas county, Nebraska. These attorneys did not represent the Thedford bank in the proceedings that resulted in the judgment; nor, except for what services they may have rendered in securing an appeal bond, did they in any manner appear for that institution in the appellate proceedings. Throughout the litigation the Citizens State Bank of Thedford was represented by Evans & Lee, a firm of attorneys of Broken Bow, and by Squires, Johnson & Johnson, a firm of attorneys of Broken Bow, Nebraska. It appears that the Citizens State Bank of Thedford, after the rendition of the judgment, and before the filing of the appeal bond, "closed its doors." On the 7th day of April, 1930, after a telephone conversation between a representative of the firm of Stevens & Stevens and Figard, the latter, in company with T. P.

Hamilton, president of, and representing, the Citizens State Bank of Thedford, proceeded to Alliance, Nebraska, and on their own individual responsibility negotiated a loan of $3,000 from the Guardian State Bank. This was borrowed by Figard and Hamilton on a "fifty-fifty" basis for the purpose of depositing the same with the clerk of the district court as a "cash appeal bond" in the case heretofore mentioned, which they were both desirous of appealing. This money was immediately transmitted to the First State Bank of Beaver City by telegraph. This telegram to that institution contained the following: "Notify and pay to Stevens & Stevens, attorneys, $3,000 for J. H. Figard and Citizens State Bank, Thedford, Nebraska, we are remitting by mail."

In reply to this telegram the following letter, signed by "Stevens & Stevens, by Wade Stevens," was addressed to and received by Figard at Thedford:

"April 8, 1930. Mr. J. H. Figard, Thedford, Nebraska. Dear Mr. Figard: We had notice from the local bank last evening that they had received $3,000 from the bank at Alliance. We receipted for it today. We found no provision for the deposit of cash as a supersedeas bond and our clerk does not like to take the responsibility of holding the money, so we deposited the $3,000 on time deposit; which will draw 3% for six months or 4% for a year's deposit. We anticipate that it will be on deposit for a year. We then executed a bond and indorsed the certificates of deposit to the bonding company as security. The premium on this bond is $55 which we will ask that you and the bank send us. The interest on the deposit will be $120 if left a year, which will more than reimburse you for the premium. We would have had to lose the interest if we had induced the clerk to hold the money. We are inclosing an application for a bond which please fill out and return to us. You do not need to pay any attention to anything except the first page where you may fill in numbers 8 and 9 and then sign on the lines checked. Trusting this will meet with your approval we are, with best regards, Yours very truly."

With this letter there was inclosed the ordinary application for the execution of an appeal bond in the case of Nebraska State Bank of Valparaiso v. Citizens State Bank of Thedford et al., directed to the United States Fidelity & Guaranty Company. It provided for the payment of a premium of $55 per annum in advance during the continuance of the obligation.

The evidence is without dispute that the letter was never submitted to Hamilton and that he never was advised of the facts recited therein, and it does not appear that any other officer or agent of the Thedford bank was given any information as to its contents. It also appears without question that the United States Fidelity & Guaranty Company executed the appeal bond applied for, and the same was properly filed and approved on April 8, 1930, and that the applicants paid the first year's premium thereon in advance.

In connection with the bond transaction, John Stevens testifies that he is one of the members of the firm of Stevens & Stevens; that during the period of the events connected with this litigation his son, Wade Stevens, the other member of the firm, was in the bonding business, representing the United States Fidelity & Guaranty Company; that the firm of Stevens & Stevens, lawyers, had nothing to do with the bonding business; that it was a side business of his son Wade, and strictly his personal affair, and that the commission derived therefrom went to Wade. This witness also testified that he had nothing to do with the matters of business pertaining to the bonding business, and the furnishing of reports, "and such as that," between Wade Stevens and the United States Fidelity & Guaranty Company. This evidence is without express contradiction in the record.

It also appears from the "power of attorney," in writing, duly executed by the United States Fidelity & Guaranty Company, that Wade Stevens was the duly appointed attorney in fact for that company, and as such authorized and in charge of its business in Furnas county, Nebraska.

It further appears that, instead of a payment to Stevens

& Stevens of the $3,000 in cash by the First State Bank of Beaver City, there was issued by that institution to Stevens & Stevens on April 8, 1930, a nonnegotiable certificate of deposit, bearing date of April 8, 1930, due six or twelve months after date, bearing interest. Thereupon this certificate of deposit was indorsed, "Pay to United States Fidelity & Guaranty Company as security on appeal bond executed by J. H. Figard and Citizens State Bank of Thedford, Stevens & Stevens," and transmitted to the United States Fidelity & Guaranty Company, and thereafter held by them until about the maturity thereof. At that time it was indorsed by this company in the words, "for renewal only, United States Fidelity & Guaranty Company, by J. Irving Cook," and returned to their Furnas county agent, Wade Stevens. Thereupon Wade Stevens indorsed the name of "Stevens & Stevens" thereon, and on April 11, 1931, surrendered this instrument to the maker, and in lieu thereof there was issued to him a second nonnegotiable certificate of deposit bearing date of April 8, 1931, for the sum of $3,120 payable to Stevens & Stevens, or assigns, due 6 or 12 months after date, with interest. This, he indorsed, "Pay to United States Fidelity & Guaranty Company for security on appeal bond of J. H. Figard and Citizens State Bank of Thedford," and transmitted this renewal to that company.

In the meantime, on October 22, 1930, at the request of T. P. Hamilton, president of the Citizens State Bank of Thedford, the Guardian State Bank of Alliance addressed a letter to Stevens & Stevens with reference to this transaction. One paragraph of this letter reads as follows:

"He (Hamilton) now has up a cash bond and he would like to know if he could place up liberty bonds instead. If it is desirable to use the liberty bonds, would a safe-keeping receipt either from our bank or the United States National Bank of Omaha cover your needs?" On October 24, 1930, receipt of this letter is acknowledged by "Stevens & Stevens, by Wade Stevens." On October 30, 1930, "Stevens & Stevens, by Wade Stevens," transmitted to the Guardian

State Bank a letter addressed to Wade Stevens by the United States Fidelity & Guaranty Company, bearing date of October 27, 1930, declining to accept and make substitution of the liberty bonds under the conditions embodied in the offer made.

It also appears that on July 17, 1931, "Stevens & Stevens, by Wade Stevens," transmitted a letter to Figard, the last two paragraphs of which were as follows:

"The certificate of deposit was renewed in the amount of $3,120, so there is plenty of interest to take care of the premiums although the interest will not be available until the certificate is cashed.

"We therefore suggest that you send us $55 to pay the renewal premium."

Figard's evidence in the record is undisputed that prior to the receipt of this letter he had no information concerning the renewal of the certificate of deposit, and at no time authorized or consented thereto. He also testifies that this information was not transmitted by him to Hamilton or the officers of the Thedford bank. It is stipulated that the First State Bank of Beaver City, issuer of the second certificate of deposit, closed its doors and was taken over by the banking department of the state of Nebraska on November 20, 1931, and thereupon ceased to be a going concern. It also appears that the judgment of the district court appealed from, and to supersede which, pending such appeal, the bond executed by the United States Fidelity & Guaranty Company was given, was reversed in the supreme court of Nebraska on February 10, 1932 (*Nebraska State Bank v. Citizens State Bank,* 122 Neb. 522), and that cause thereafter remanded to the district court for Furnas county for further proceedings; that on June 10, 1932, by order of that court, the action was finally dismissed and all possible financial liability on the appeal bond terminated. On June 24, 1932, the plaintiffs made demand on the defendant company for the repayment of the sum of $3,000 advanced by them to the company, and such company "has at all times failed, neglected and refused to pay the same."

This transaction relates wholly to securing an appeal bond and indemnifying the surety on that obligation. The parties in interest were so situated that it was carried on wholly by telephone, telegraph, and letters. It was an insurance transaction and constituted a part of the insurance business of Wade Stevens, the agent of the United States Fidelity & Guaranty Company. Notwithstanding, in letters, we find the signature "Stevens & Stevens, by Wade Stevens," employed, the nature of the business which formed the subject of these communications fully discloses that they pertain to the insurance business of Wade Stevens, and in which the firm of Stevens & Stevens had no part or interest. But, at all events, the only business which the plaintiffs transacted with the defendant company was limited to "insurance business" which was strictly a business carried on by Wade Stevens as the company's agent. Granting that in these matters Wade Stevens, for purposes of his own, employed the name of the law firm of which he was a member, still in view of the nonnegotiable character of the instruments involved, and the relation of the parties in interest, this situation invokes the application of the rule:

"Notice to an agent, who, with their knowledge and consent, represents both parties to a transaction, is notice to either of them to whom it would be notice if the agent represented him alone, and if each would be charged the notice to the agent is notice to both. Thus, where a principal knows that his agent is also acting as agent for the party adversely interested in the transaction, and yet consents to let him act as his agent, the principal is estopped from denying notice and knowledge which the agent has during the negotiation." 2 C. J. 872.

Under the facts narrated, the first certificate of deposit was a chose in action, the receipt of which by the defendant company constituted a valid pledge to secure it against loss on the appeal bond it had executed. In this transaction it was chargeable with knowledge of the true relation of the parties involved, and that upon execution of the bond and

delivery of the collateral the transaction was finished. Thereafter, on maturity of the certificate of deposit, without notice to, or actual knowledge of, or authority from, the plaintiffs, on or about April 8, 1931, the defendant company renewed and extended the certificate of deposit for another year. The result of this action brings the case squarely within the rule, viz.: "The pledgee's unauthorized renewal or extension of pledged collateral amounts to a conversion." 49 C. J. 952.

The principle cited was approved by this court in *Haas v. Bank of Commerce*, 41 Neb. 754, 60 N. W. 85. In that case, in the opinion approved by this court, Irvine, C., says: "We think that the weight of authority is to the effect that if a pledgee, without the consent of the debtor, renews or extends a note pledged as collateral, or surrenders such note and takes new security, he must account to his debtor as if he had collected it in full. *Gage v. Punchard*, 6 Daly (N. Y.) 229; *Nexsen v. Lyell*, 5 Hill (N. Y.) 466; *Southwick v. Sax*, 9 Wend. (N. Y.) 122; *Depuy v. Clark*, 12 Ind. 427."

This doctrine was again approved in *Ross v. Barker*, 58 Neb. 402, 78 N. W. 730.

In *Larson v. National Surety Co.*, 60 N. Dak. 538, 235 N. W. 495, in a case involving facts almost identical with those here presented, it was held: "A pledgee holding as security a certificate of deposit payable on a day certain, with authority to collect it without notice at any time, who without the knowledge and consent of the pledgor surrenders the certificate of deposit so held by it and takes in lieu thereof a new certificate payable at a date long subsequent to the date of maturity of the original certificate, becomes liable to the pledgor as for a conversion."

In this situation the defendant company presents as its defense the doctrine of ratification of the renewal and extension of the certificate of deposit by silence—the failure of plaintiffs to promptly and seasonably disaffirm it.

Ratification may be defined as follows: "Ratification is the affirmance by a person of a prior act which did not bind

him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement, Agency, sec. 82.

It is necessary in this connection to distinguish between ratification and estoppel. "The substance of estoppel is the inducement to another to act to his prejudice. The substance of ratification is confirmation after conduct." *Steffens v. Nelson*, 94 Minn. 365, 102 N. W. 871.

Ratification is a matter of intention. In order that there be ratification, there must be a voluntary assumption of the unauthorized act on full information. 2 C. J. 928. It would not suffice to show that the principal omitted to make inquiries, or might have learned the facts by diligence. *Rawleigh Co. v. Bunning*, 107 Neb. 475, 186 N. W. 331. A party is bound by ratification only because he intended to be, and its existence is determined in such intention of the principal, either express or implied.

In *Oberne v. Burke*, 50 Neb. 764, 70 N. W. 387, this court announced the rule: "A ratification by a principal of the unauthorized act of his agent may be inferred from the conduct of the former inconsistent with any intention other than a purpose to adopt such act as his own."

، It has been stated that "Silence simply in itself is ordinarily no evidence of anything." *Iron City Nat. Bank v. Fifth Nat. Bank*, 47 S. W. (Tex. Civ. App.) 533.

It is only when silence is connected with special circumstances making it the duty of the principal to speak that obligations are created. *White v. Langdon*, 30 Vt. 599.

As a practical matter, the maintenance of silence is almost inseparable from the circumstances under which it is maintained. Indeed, it is the conditions under which silence occurs and which accompany it that establish or negative ratification.

The defendant company cites to sustain its contention the following principle quoted from Restatement, Agency, sec. 94: "An affirmance of an unauthorized transaction may be inferred from a failure to repudiate it." In the text fol-

lowing the announcement of this principle appears the following comment: "a. Silence under such circumstances that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent, is evidence from which assent may be inferred."

A careful examination of the Nebraska cases cited by appellee discloses that they are inapplicable to the instant contention.

In *Day v. Miller,* 1 Neb. (Unof.) 107, 95 N. W. 359, where property was knowingly received as the result of an unauthorized transaction, and knowingly retained for more than two years, it was held to amount to a ratification by such possessor as well as an estoppel binding upon him.

In *Fenimore v. White,* 78 Neb. 520, 111 N. W. 204, where plaintiff's attorney made a settlement with the defendant for $200 which was paid over to his client, with knowledge and without objection on part of such client, and the return of which was never offered or made, it was held sufficient to show a ratification of the acts of the attorney.

In *German Nat. Bank of Hastings v. First Nat. Bank of Hastings,* 59 Neb. 7, 80 N. W. 48, this court announced the principle: "A sale of corporate assets, made by an agent in excess of his authority, will be, ordinarily, ratified by the acts of the corporation in dealing with the purchaser as the owner of the property."

In *Singer Sewing Machine Co. v. Barger,* 92 Neb. 539, 138 N. W. 741, we held that, where the holder of a note, with notice that it had been unlawfully altered by raising the amount, by its agent, brings an action upon it in its altered condition, and endeavors to recover in such action, he thereby ratifies the act of alteration.

In the instant case the plaintiffs neither received, dealt with, or sued upon the obligation which the defendant caused to be created.

In the case before us ratification is in the nature of an affirmative defense, and the form of the issue imposes the burden of the evidence upon the defendant. *Rawleigh Co. v. Bunning,* 107 Neb. 475, 186 N. W. 331.

Not only is there affirmative evidence in the record that the Thedford bank, T. P. Hamilton, and the bank's officers and agents at no time had knowledge of the renewal and extension of the certificate of deposit until substantially at the time of the commencement of this action, but no attempt is made to negative that fact. True, plaintiffs paid one-half of the renewal premium on the appeal bond about April 8, 1931, but that obligation was wholly unconnected with the subject of indemnity. Besides, the Thedford bank had "closed its doors" prior to the execution of the appeal bond and the necessary steps taken to secure it were performed by its president in his individual responsibility and for its benefit. No express authority to renew the certificate had been conferred on Stevens & Stevens by either J. H. Figard or the Thedford bank. None can be implied. *Luce v. Foster*, 42 Neb. 818, 60 N. W. 1027.

As a result of the renewal and extension of the certificate of deposit by the United States Fidelity & Guaranty Company on the 8th of April, 1931, made without knowledge or approval of plaintiffs, the rights of the parties thereto and the owners thereof were definitely fixed. Subsequently the defendant parted with nothing in reliance on the new situation. Nothing was accepted or received or enjoyed by the plaintiffs because of what had happened. Briefs fail to indicate that the defendant refrained from taking any steps that would have been taken had repudiation been made by plaintiffs earlier. Delay has impaired the rights of no one connected with the proceedings, and nothing of value has accrued to the plaintiffs by reason thereof. Under these circumstances, the authorities upon which defendant relies are inapplicable to the uncontradicted evidence. There has been a total failure on part of the defendant to establish a ratification by plaintiffs of the renewal of the certificate of deposit, and plaintiffs are entitled to recover the sum of $3,000 and interest as alleged in their petition.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.